EX PARTE MARSHALL LAMKIN *alias* MARSHALL LAMKINS

No. 29,771. April 2, 1958.
Relator's Motion for Rehearing Overruled
(Without Written Opinion) May 21, 1958.

*Kenneth Lamkin,* and *Arthur Mitchell,* Austin, for Relator.

*Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

Relator was tried in the district court of Caldwell County for the offense of murder, and a death penalty was imposed. Lamkin v. State, 165 Texas Cr. Rep. 11, 301 S.W. 2d 922. Thereafter, relator made application to the court in which he was convicted for the writ of habeas corpus, alleging that Randall Weber, who was a member of the jury that convicted him, conversed with a person who was not a member of the jury and that as a result thereof he was denied a trial in accordance with the rules of due process.

The trial court granted the writ, held a hearing, and has certified the results to this court in accordance with the terms of Article 119, V.A.C.C.P. From this, we find the following:

Deputy Sheriff Gallat testified that, during a portion of relator's trial, he was in charge of the jury; that on the first evening of the trial, after the jury had been selected and after the wives of a number of the jurors had been notified that their husbands had been selected to serve on the jury, the wife of juror Weber appeared at the courthouse with a suitcase and indicated her desire to speak to her husband about some automobile papers; that he either preceded or followed her up the stairs to the second floor, where she met her husband who had been brought down from the jury room on the third floor; and that they entered the sheriff's office, where each of the parties communicated through him about certain automobile papers. He stated that the parties did not talk directly to each other but would propound a question to him; he, in turn, would repeat the question to the other and transmit the answer in the same way. He stated that when he first saw the parties on the second floor, and before they had entered the sheriff's office, they were six or eight feet apart and he could not swear whether or not they said anything to each other during the minute or two before they entered the sheriff's office.

Mrs. Weber testified that in the evening of the first day of the relator's trial she received a note from her husband requesting that she bring certain papers to the courthouse, that she packed some clothes, procured the desired papers, and presented herself at the courthouse where she learned that the jury had gone to supper; that she waited in her automobile until the jury returned, and was instructed by the officer in charge of the jury to wait until he lodged the jury on the third floor; that the officer returned and conducted her to the sheriff's office which she immediately entered and there conversed with her husband in the manner described by Officer Gallat. She stated that she did not converse with her husband prior to entering the sheriff's office.

The juror Randall Weber testified that his wife brought some clothes and some papers that he wanted to endorse to the finance company to the sheriff's office and that he spoke to her through the deputy sheriff. He stated that he did not speak to his wife prior to entering the sheriff's office.

All the witnesses denied that relator's case was mentioned in their conversation.

In McCune v. State, 156 Texas Cr. Rep. 213, 240 S.W. 2d 305, we were presented the contention that the presumption of

injury which arises when it is shown that a member of the jury conversed with an unauthorized person could not be rebutted. We overruled such contention and held that, where all the parties who joined in the conversation were called and testified that the case was not discussed, the state had fully discharged its duty of rebutting the presumption and that no reversible error was shown. We adhere to the rule set forth in McCune.

Though not alleged as grounds in the application for writ of habeas corpus, we do find certain additional contentions made which, because of the extreme penalty, will be discussed. We will not re-discuss those complaints which were raised during the trial and discussed in our original opinions on appeal.

1. Relator contends that the district attorney knew that a member of the grand jury was related to the deceased and did not point out such fact to the relator or his attorneys or the court. The only evidence on the question was the testimony of the district attorney taken at the habeas corpus hearing eighteen months after the trial in which he states he could not remember whether he had heard of the relationship between the grand juror and the deceased at the time the grand jury was in session but "halfway think someway I heard something in that connection," but could not say when he had heard it. The question of the qualification of the grand juror was discussed in our original opinion. We do not think that relator has established knowledge on the part of the district attorney and so do not deem it necessary to pass upon relator's contention that it became his duty to disclose the fact in question.

2. Relator contends that the district attorney knew that the juror Weber was the husband of a witness who was subpoenaed but not called as a witness by the state and did not challenge him as a juror. At the habeas corpus hearing no definite showing was made that the district attorney knew such fact at the time of the trial. Be that as it may, we will discuss Mrs. Weber's possible testimony had she been called as a witness. On the day of the homicide she was driving in her automobile past the scene of the homicide, heard a shot, saw a man fall, and continued on her way. She did not see the appellant or know who had fired the shot, and she did not recognize the man who had been shot. By the time her husband returned home that night she had learned the identity of the deceased and reported to him what she had seen. This was the last time they discussed the matter together.

Juror Weber testified that upon his return home on the night

of the homicide his wife reported to him that the deceased had been shot and that they did not discuss the matter again before the trial. There is an absence of any showing that appellant's counsel made any effort to determine if the Randall Weber whose name appeared as the second name on the special venire list was related to the Mrs. Randall Weber whose name appeared on the state's subpoena which was examined by appellant's counsel.

That appellant shot and killed the deceased is shown by undisputed evidence. It will be seen from the above that the wife witness knew no fact injurious to the appellant which she might have communicated to the juror husband, and no effort was made by appellant's counsel to determine such relationship.

3. It was established at the habeas corpus hearing that one of the jurors was a brother-in-law of the then-sheriff of the county.

Relator did not question the qualification of the juror to serve during the trial and does not now make any showing that he was in fact disqualified, had ever discussed the case with the sheriff or had any opinion about the case, and it is not even shown that the juror and his brother-in-law were on friendly terms. We find no showing that the juror misled counsel during his voir dire examination, but, at most, this record shows a failure to inquire of the juror concerning his relationship to the state's witnesses.

4. It was established at the hearing that one Swaner was subpoenaed as a defense witness but that his employer told him that he did not know anything about the case and did not have to appear. Swaner testified that, though he worked about four doors from where the homicide occurred, he did not see the man who was killed or the man who did the shooting and had not told appellant's counsel that he had.

We here observe that if this testimony might be construed as an effort on the part of Swaner's employer to prevent him from appearing at the trial such effort was not effective because the witness did appear at the courthouse on the day of the trial.

Relator's counsel testified that prior to the trial he talked to Swaner and Swaner told him he had heard the report of the gun and "quickly looked up after the report" and "I think we asked him whether or not he saw Marshall (the relator) standing in the

door. I believe his answer was no"; that on the morning of the trial he had spoken to Swaner again and Swaner told him he had "been told by his employer not to testify in the case" and, following this, he did not call Swaner as a witness.

We recapitulate: Swaner testified that he did not see the homicide and had not told appellant's counsel that he had. Appellant's counsel testified that he *thought* he asked Swaner certain questions and *believed* he gave a certain answer. Appellant's counsel testified that "where the defendant was in his place of business" at the time of the shooting was a highly controverted fact at the trial.

We have again reviewed the statement of facts on the original trial and are not impressed with the materiality of the testimony of the witness of which the relator contends he was deprived, even if the witness would have testified in accordance with appellant's counsel's version of his conversation with him.

We overrule the contention that the evidence establishes that relator has been denied due process of law.

The writit of habeas corpus is denied.